## 8867.  MARSHALL *v.* THE STATE.

1. Where a petition for change of venue is presented to a judge of the superior court whose term of office is about to expire, and who verifies the brief of evidence adduced at the hearing thereof, and continues the motion or passes it to his successor in office for consideration, the judge who at a subsequent time considers the motion, in the absence of any testimony in behalf of the movant or the State tending to show that conditions have changed since the time of the original hearing or the time when the original evidence was adduced, should pass upon the motion in the light of the record as presented to him.
2. The trial judge, in passing upon the motion in this case, did not indicate any doubt that at the time the evidence before him was taken, it was sufficient to require the grant of the motion; and in the opinion of this court the evidence both authorized and required a change of venue.

DECIDED JUNE 29, 1917.  REHEARING DENIED AUGUST 12, 1917.

Indictment for murder—petition for change of venue; from Irwin superior court—Judge Crum.  April 25, 1917.

*Melvin Meeks, Walter M. Rogers, H. J. Quincey,* for plaintiff in error.  *J. B. Wall,* solicitor-general, *Jesse Grantham, H. E. Oxford,* contra.

WADE, C. J.  At the October term, 1916, of the superior court of Irwin county Wiley Marshall was indicted for the murder of C. B. Jeffries, alleged to have been committed on September 2, 1916.  On October 26, 1916, the defendant filed his application for a change of venue, in which he set forth that he was an old negro who had resided in the county of Irwin about 10 or 12

years only, and during that time had lived largely apart from the general public, among his negro friends, without acquiring any extended acquaintance with the white population of the county or even of the community in which he lived; whereas the deceased, Jeffries, was a white man who had resided there for many years, and was well and favorably known and had a great number. of influential friends and relatives and was both popular and prominent in the county. He alleged further that ever since the commission of the homicide continuous and numerous threats had been made by citizens of Irwin county to lynch him, in the event he should ever be brought back to that county from the county of Crisp, where he was then confined as a prisoner, in the common jail at Cordele, and that his life would be in grave danger because of mob violence if he should be brought into Irwin county for trial, from his present place of safety. He further set forth that immediately after the commission of the homicide he went to the home of a white man, who at his request telephoned the sheriff of Irwin county to inform the sheriff where he was and that he was ready to place himself in the legal custody of that officer, to abide the consequences of his acts and to escape mob violence, and, upon the arrival of the sheriff in response to this message, he delivered himself up to the officer, who at once placed him in an automobile and promptly conveyed him to the town of Osierfield in Irwin county, and there procured the sheriff's brother to convey him safely to the common jail at Cordele in Crisp county, to escape the danger of threatened mob violence, and the defendant was so conveyed to said jail. The petition further alleged that the defendant was only kept from the hands of a mob of citizens of Irwin county by the immediate action of the sheriff in thus quickly conveying him to a place of safety without the limits of the county, and that under the conditions which still existed at the time his petition for a change of venue was filed (which conditions would still exist at the trial of the case, if he were tried in Irwin county), even should he make good his defense against the charge preferred in the indictment, and be discharged or receive a sentence other than death, he would immediately be lynched.

In an amendment to his application the defendant further set out that on the night of the homicide a large number of friends and relatives of the deceased formed themselves into a mob and

scoured the locality in and around the scene of the homicide, searching for the defendant, with the avowed intention and purpose of lynching him should he be apprehended, and that the purpose of the mob was frustrated only by the hasty and immediate action of the sheriff of Irwin county in conveying the defendant to Osierfield, some fifteen miles away, and there placing him on a train for Cordele, Georgia, to be consigned to the common jail at that place for safe-keeping; that the place where the defendant delivered himself up to the sheriff was only two or three miles from Ocilla, the county seat of Irwin county, but the sheriff did not take the defendant to Ocilla either for imprisonment or to be from thence conveyed to a place of safe-keeping, because of the fear entertained by the sheriff that mob violence against the defendant would follow. The amendment suggested that in the event the defendant should be returned to the county of Irwin for trial and should receive at such trial a sentence less than death, and the friends and relatives of the deceased should attempt to lynch him or do other bodily harm to him, the sheriff of the county would be unable to prevent it, since there were no available State militia or troops that could be called to his assistance as contemplated by law, to prevent bodily harm to him, the troops being then absent from the State, in the service of the general government.

Evidence of several persons was submitted to sustain the charge that on the night after the homicide there was intense excitement, that threats of lynching were made by many, and that a number of persons were seeking the defendant, and possibly or even probably would have taken his life had they succeeded in capturing him at that time. It was further shown that immediately after he had been placed under arrest, the sheriff conveyed him out of the county, because of fear that violence would follow if he should be incarcerated in the county jail of Irwin county. The following affidavits were introduced in behalf of the defendant and movant: "C. A. Walker, by affidavit, testified: Am a citizen of Irwin county, residing in Ocilla for the past nine years; know Cord Jeffries, for whose alleged murder one Wiley Marshall has been indicted by grand jury of Irwin county. Said Jeffries was a man who had quite a number of friends over the county, especially in the community in which he lived. Have heard more or less comment as to the advisability of bringing Wiley Marshall back to

Irwin county to be tried. While I think there would be no disturbance, or violence done to said Wiley Marshall if he were brought back, tried, and found guilty, and hanged forthwith, yet believe that if he were tried and acquitted, or should be found guilty of an offense the penalty for which is less than death, there would be a probability of his being lynched." "William Henderson, by proper affidavit, testified: Am a resident of the county of Irwin, and have been for many years past; am well acquainted with the people generally all over said county, also well acquainted with the general sentiment of the people all over said county. Have talked to, and heard quite a few people talk of the death of Cord Jeffries since on or about the second day of September, 1916, and concerning the safety of Wiley Marshall, the alleged murderer of said Cord Jeffries, if he should be returned to the county of Irwin for trial. The sentiment of the people, and especially of the close friends and relatives of said Cord Jeffries, is very strong against the said Wiley Marshall. There is a strong current of opinion that if the said Wiley Marshall should be returned to the county of Irwin and tried upon the charge of murder of the said Cord Jeffries and should receive at said trial any other sentence or punishment, less than the death penalty, he would be lynched at the hands of a mob if his body could possibly be obtained, and that much trouble would be had in preventing his being lynched, if in fact his lynching could be prevented." Testimony as to the prominence and popularity of the deceased, and as to the probability that the defendant would have been lynched had he been captured on the night after the homicide, was given by witnesses for the State, who, together with other witnesses introduced in behalf of the State, asserted the opinion that there was at the time they gave their testimony no danger of mob violence should the defendant be returned to Irwin county, and there tried and acquitted, or convicted and a penalty less than death imposed upon him. The movant introduced a witness who testified that he doubted if the accused would be safe from violence or attempted violence if brought back to Irwin county and tried, and this witness said that he had heard threats the night before from one man. The ordinary of the county testified that he did not know whether the defendant could be brought back to Irwin county and receive a sentence of twenty years or less than death and be safe from mob

violence or attempted violence, but admitted that he may have stated to one of the witnesses for the movant the day before that he had reason to apprehend that the defendant might receive bodily harm; but he stated that he had further said that it was not necessary to get a change of venue.

The application for change of venue was made to Hon. Walter F. George, then judge of the superior courts of the Cordele judicial circuit. Judge George resigned his position as judge of the Cordele circuit to enter upon his duties, on January 1st, 1917, as a member of this court (though he is not presiding in this case), and before the expiration of his term of office he entered the following order:

"State of Georgia *v.* Wiley Marshall—Indictment for murder in Irwin superior court. Petition and motion for change of venue, at October term, 1916.

"I, W. F. George, do hereby certify that during the month of October, 1916, I was the duly constituted presiding judge of the superior court of Irwin county; that the petition and motion above stated was duly made by the said defendant, Wiley Marshall, at the October term, 1916, of said court. I further certify that evidence, both oral and by affidavit, was introduced by the petitioner and movant, and also by the State, on said motion, October 26th, 1916; that said evidence was, by agreement of counsel, transcribed by the official stenographer in brief form rather than in narrative form. I do hereby further certify that the attached and foregoing is the true and correct official brief of the oral and affidavit evidence introduced before me in said cause, both by the petitioner and movant as well as by the State, and the same fully and accurately sets forth all the material evidence introduced either by the movant or State touching said motion, and the same is hereby unqualifiedly approved by me as a correct brief of such evidence. Having in contemplation the early termination of my term of office as such presiding judge, and there being no term of Irwin superior court before the date of my resignation, I did not pass upon said petition and motion for change of venue, but passed the same over, together with the record in said matter, including the said official brief of the evidence hereto annexed in said cause, to my successor in office, Honorable D. A. R. Crum, for his consideration.

"In witness whereof I hereunto set my hand and seal.

"W. F. George."

Hon. D. A. R. Crum succeeded Judge George as judge of the superior courts of the Cordele circuit, and, the motion for a change of venue having been brought to his attention, he passed the following order on April 25, 1917:

"State of Georgia v. Wiley Marshall—Indictment for murder in Irwin superior court. Motion by defendant for change of venue, filed October 24, 1916.

"The above-stated motion for change of venue is brought before me for the first time this day. I understand the facts to be that this motion for change of venue was submitted to his honor Walter F. George, former judge of the superior court of this county, whose term of office expired January 1st, 1917, shortly after the same was made; that he heard evidence on such motion, and the same has been reduced to writing, and is now a part of the record of this motion; that said motion was never passed upon by his honor Judge George, and the same has never been read by myself, it never having been brought before me by anyone connected with the case. As I understand, motions for change of venue on the ground as stated in this motion relate to the present, and not to the past. For these reasons, and the fact there is no evidence before the court, other than that which relates to the time at which it was taken, going to show that movant would at this time be in danger of mob violence if brought to trial in this case for the offense with which he stands charged, or that he could not secure a fair and impartial trial in this county at this time, the motion is hereby overruled and denied. This judgment is made for the reason, not that the evidence contained in the record would not have authorized a change of venue at the time it was taken, but because in my judgment the motion for change of venue must be upon grounds going to show danger of mob violence or inability to secure a fair and impartial trial at the time it is sought to place the movant upon trial.

"Done in open court, this 25th day of April, 1917.

"D. A. R. Crum, Judge Superior Courts Cordele Circuit."

The defendant filed a bill of exceptions, in order that the ruling on the application for change of venue might be reviewed by the Supreme Court; and, because of the jurisdictional changes made by the constitutional amendment of 1916, the case was by order of the Supreme Court transferred to this court on May 18, 1917.

The act of 1911 (Acts of 1911, p. 74), providing for a change of venue under conditions and for reasons not recognized by then existing law, embodied in section 964 of the Penal Code of 1910, may be found in 6 Park's Annotated Code, as a part of or appended to that section, enclosed in brackets. It is now the law of this State that "If a motion by petition shall be made by the accused for a change of venue, said judge shall hear the same at chambers, with or without the presence of the accused, at such time and place in the State as he may direct. And if the evidence submitted shall reasonably show that there is a probability or danger of lynching, or other violence, then it shall be mandatory on said judge to change the venue to such county in the State as in his judgment will avoid lynching. The petitioner shall have the right to except to the ruling of the court at such interlocutory hearing," etc. It will be observed that the law just quoted makes it *mandatory* on the judge to change the venue upon application by the accused not only where the evidence submitted "shall reasonably show that there is a probability" of lynching or other violence, but also where there is "*danger* of lynching, or other violence."

Whether or not there be a "probability" of violence, should the accused in this case be carried back to Irwin county and there tried, we think that undoubtedly (under a fair and reasonable construction of the entire testimony) "danger" of lynching or other violence in the event he should be tried in Irwin county and should not be convicted, or, if convicted, any penalty less than death be imposed upon him, is so far indicated by the testimony as a whole as not only to authorize but to require a change of venue, in order that the dignity of the law may be preserved and that the sovereign power of the State to determine the guilt or innocence of those accused of crime within her borders by orderly and impartial trial may be upheld, and, in case of conviction, only such punishment be imposed as may be authorized by the calm unbiased judgment of the courts. Suffice it to say, the learned trial judge, in his order denying the motion for a change of venue, states that his reason for denying the motion is that the evidence before him does not "show danger of mob violence, or inability to secure a fair and impartial trial, *at the time it is sought to place the defendant on trial*" (italics ours), and not "that the evidence contained in the record would not have authorized a change of

venue *at the time it was taken.*" The evidence in behalf of the
movant being held to be sufficient at the time it was taken, the
question remaining for determination is therefore whether or not
the judge of the superior court erred in declining to allow a change
of venue for the reason that the movant did not by additional evi-
dence show that the same state of affairs, proved to exist at the
time this evidence was collected, still in fact existed; or, in other
words, that no change in the temper of the people of Irwin county
had occurred since that evidence was taken, and that at the time
the judge passed upon the motion the same probability of danger
of lynching or mob violence yet remained that in fact existed when
the motion was originally presented, or the evidence in its support
was adduced.

It is the opinion of this court that where the evidence produced
at the hearing of such a motion shows that the public mind was
so inflamed against one accused of crime at any time after the
alleged commission of the crime that there was *then* a probability
or danger of lynching or mob violence, and the judgment of the
court upon such an application is for any reason delayed, the
judgment finally rendered should be based upon the record before
the court. Considering the purpose of the act of 1911, supra, it is
not properly within the province of a judge, passing upon a motion
to change the venue, to assume, in the absence of proof, notwith-
standing the length of the intervening time from the date when
the evidence accompanying such a motion was taken to the date
when the motion is disposed of by the judge, that there has been a
change in the temper of the people or in other controlling circum-
stances and that all probability or danger of violence has passed.
Any other rule would in effect allow the trial judge absolute power
to refuse a motion for a change of venue, without fear of reversal,
even where the overwhelming weight of evidence and all connected
circumstances clearly indicate to every other person than himself
that at the time the evidence was taken or presented, not only the
probability or danger of lynching or violence was to be appre-
hended, but that such violence was to be anticipated almost to a
moral and reasonable certainty; for, himself doubting the necessity
for a change of venue to insure the proper enforcement of the law,
the judge might, with the best intentions possible, wilfully delay
passing upon such a motion for a short period of time, and then

refuse to allow the change of venue, upon the ground that at the precise time when judgment was rendered upon the motion there was no satisfactory showing that the former or recent conditions shown by the evidence previously taken still existed. Thus, the personal impression or opinion of the judge alone might be substituted for that of the witnesses who testified on the point as provided by law, and the opportunity to review the ruling upon such a motion be practically nullified in cases where any considerable time elapsed between the taking of the evidence in support of the motion and the rendition of the judgment thereon, and no additional evidence was presented by the movant up to or at the time the motion was denied. Giving the law a reasonable construction, and having in mind its evident purpose, and remembering the distinct provision therein for reviewing a judgment denying a change of venue, it is clear that the legislature did not intend to invest the trial judge in such case with autocratic power to render judgments, a review of which he might prevent, and thus render his own decision final, by simply delaying the time of its rendition.

Generally a condition of facts once proved to exist is presumed to continue until the contrary is shown; the degree of probability as to this continuance depending on the chance that intervening circumstances have occurred to bring it to an end. "The presumption of continuance, as it is called, is simply a mode of determining on which party lies the burden of proof. In this sense we are justified in holding that the continuance of an existing condition is a presumption of fact, dependent for its intensity on the circumstances of the particular case. *The burden is on the party seeking to show change*" (italics ours). 2 Wharton's Criminal Evidence (10th ed.), 1574. See, in this connection, *Green* v. *Atlanta,* 16 *Ga. App.* 577, 580, 581 (85 S. E. 815). "When the existence of a person, a personal relation, or state of things is once established by proof, the law presumes that the person, personal relation, or state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question." 10 R. C. L. § 15, p. 872. See also *Anderson* v. *Blythe,* 54 *Ga.* 507, 508, 509; *Coleman & Burden* v. *Rice,* 105 *Ga.* 163 (31 S. E. 424) ; *Taylor* v. *State,* 110 *Ga.* 150, 154 (35 S. E. 161) ; *Drawdy* v. *Hesters,* 130 *Ga.* 161 (4) (60 S. E. 451, 15 L. R. A. (N. S.) 190). It may very properly be sug-

gested that proof showing great excitement soon after the com-
mission of a crime would not raise a rational presumption that the
public mind would continue indefinitely or for a great length of
time in this inflamed condition.  But, on the other hand, where it
is shown, as in this case, that the deceased was both prominent
and popular and had a large circle of relatives and friends, it may
be safely assumed that 'the desire for revenge against his slayer,
which found expression immediately after the homicide by the as-
sembling of many of those who not only lamented his loss but were
angered at his tragic removal from life, and found further ex-
pression in their widespread efforts to capture the alleged slayer,
and the open threats to do him bodily violence, would not soon be
removed from the minds and hearts of those who yet cherished
the memory of their deceased relative and friend, and whose hearts, ·
governed by ordinary human impulses, would glow with a resent-
ment scarcely to be assuaged until vengeance should be ultimately
visited upon his slayer.  If the State, in opposing the motion for a
change of venue, relied upon any change in conditions, or in public
sentiment in the county of Irwin, the burden was upon it to pre-
sent evidence tending to rebut the presumption that the probability
and danger of lynching or violence, which, according to the testi-
mony previously submitted, had formerly existed, was not in fact
either a "probability" or a "danger" at the time when the motion
was finally passed upon.  In the absence of any testimony in be-
half of the State or of the movant which suggested additional rea-
sons why the motion should be granted or refused, it was incum-
bent upon the court to pass upon the application in the light of
the existing record, or of the evidence properly before the court for
consideration.

The fact that a considerable time had elapsed between the taking
of the evidence accompanying the motion and the rendition of the
judgment thereon did not of itself authorize the presiding judge to
assume that a change of sentiment had necessarily followed, or even
to exact of the movant proof that there had been no change in
public sentiment or in the danger originally shown to exist.  The
killing occurred on September 2, 1916, the defendant was indicted
for murder at the October term of the superior court thereafter,
and on October 26, 1916, the application for a change of venue
was submitted to the then presiding judge of the Cordele circuit,

and on April 25, 1917, the motion was refused upon the ground that it did not show danger of mob violence at the time it was sought to place the defendant and movant on trial. So it will be seen that six months elapsed between the original submission of the case to Judge George, upon the record then made, and the refusal of the motion by his successor, Judge Crum, on the same record. The evidence therefore showed that there was danger that the defendant would be lynched at the time that evidence was adduced, six months before the motion was finally denied. The case of *Bivins* v. *State,* 145 *Ga.* 416 (89 S. E. 370), furnishes at least a physical precedent for the ruling that we make on this point; for in that case the following recital appears: "The evidence submitted on the hearing of the motion for change of venue very strongly tended to establish the fact that during the trial of the accused (*about a year prior to the hearing of the motion* [italics ours]) there was imminent danger that he would be lynched." Here, six months before the judge refused the motion, witnesses testified that in their opinion there was danger *then* existing that the defendant would be lynched if brought back to Irwin county; and there is nothing to show that this condition of affairs had changed by or before April 25, 1917, and that the danger had been thus removed.

Much of the evidence offered in behalf of the State is negative and uncertain, while some of the evidence in behalf of the movant is absolute and positive; so that, considered as a whole, the testimony in the case was in our judgment sufficient to authorize, if not to require, a change of venue. See *Bivins* v. *State,* supra; *Kennedy* v. *State,* 141 *Ga.* 314 (80 S. E. 1012).

The Supreme Court, in *Wilburn* v. *State,* 140 *Ga.* 138, 141 (78 S. E. 819), made the following ruling: "We are of the opinion that where the evidence is conflicting upon the issue as to whether or not under the petition such a case is made as requires the judge to grant the motion, the judge hearing the same passes upon the issues that are to be determined upon evidence, and that his finding and judgment upon the same is final and controlling, unless manifestly erroneous. In the present case the evidence was conflicting upon the material issues, and it can not be said that it was manifestly erroneous to refuse to grant a change of venue." Applying this ruling, if the judge of the superior court who de-

nied the motion had based his denial upon his opinion as to the insufficiency of the evidence as a whole to show the existence of any probability or danger that lynching or violence would result if the defendant were tried in the county where the crime was alleged to have been committed, we might not be able to say that "it was *manifestly* erroneous to refuse to grant a change of venue;" since the evidence was undoubtedly conflicting upon the material issues as to the state of the public mind at the time the evidence was taken. However, as already suggested, the learned judge of the superior court strongly intimates the opinion that the evidence adduced in behalf of the movant was sufficient to require the grant of the motion at the time the same was adduced, and bases his refusal upon the ground that there was no proof that the conditions established by this evidence still existed. Hence the finding of the judge upon the issues of fact can not be considered as "final and controlling" in this case, even though an adverse ruling could not be characterized as "manifestly erroneous," for there has been in fact no finding by the trial judge against the sufficiency of the evidence to require the grant of the motion, but his finding is rather to the contrary, and the language of the act of 1911 is mandatory.

We can not, however, reverse and send this case back with instruction that the trial judge pass upon the record as made, and base his judgment thereon without considering any possible change of conditions which may have arisen since the said evidence was originally adduced; for the order as entered specifically provides that "the motion is hereby overruled and denied;" and we therefore hold, in the absence of any ruling to the contrary from the trial judge, that the evidence was sufficient to require the grant of the motion, and that the judge of the superior court erred in refusing to allow the change of venue.

*Judgment reversed. Luke and Bloodworth, JJ., concur.*