12058.  BUTLER *et al. v.* THE STATE.

LUKE, J.  1. Upon the hearing of a motion to change the venue in a murder case, upon the ground that there is probability or danger of lynching or other violence being done to the petitioner, if the evidence submitted reasonably shows that there is probability or danger of lynching, or other violence, then it is mandatory upon the judge to change the venue to some county in the State where, in his judgment, the petitioner can be safely tried. Ga. L. 1911, p. 74; *Kennedy* v. *State,* 141 *Ga.* 314 (80 S. E. 1012); *Graham* v. *State,* 141 *Ga.* 812 (82 S. E. 282); *Newman* v. *State,* 143 *Ga.* 270 (84 S. E. 579); *Bivins* v. *State,* 145 *Ga.* 416 (89 S. E. 370); *Marshall* v. *State,* 20 *Ga. App.* 416 (93 S. E. 98).

2. Under the above ruling and the evidence submitted upon the hearing of the motion to change the venue in the instant case, the court erred in denying the motion.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*

DECIDED MARCH 8, 1921.

Motion to change venue; from Taliaferro superior court — Judge Walker. December 17, 1920.

Dink Butler and Fate Fews were jointly indicted for the murder of W. R. Rainey; they were convicted, their motions for a new trial were overruled, and the judgments overruling the motions were reversed by the Supreme Court, that court holding that the evidence was not sufficient to authorize the verdicts. 150 *Ga.* 353 (103 S. E. 809). In October, 1920, they moved for a change of venue, the motion was denied, and the case came to the Court of Appeals on exceptions to that judgment.

In support of the motion for change of venue the following affidavits were presented to the judge of the superior court: J. A. Beazley deposes as follows: He was attorney for defendants in the above-stated case. Immediately following the shooting there was grave danger of lynching, and the same was narrowly averted by some of the citizens of Crawfordville and the officers. These citizens promised the crowd which surrounded the jail the night of the shooting that, if they would not molest the negroes, they would see that a special term of court was called and the negroes speedily tried and executed. A special term was called for January 3d. Deponent heard repeated remarks that they were going to get the negroes. At the time of the trial feeling was very high on the part of the friends of the dead man and others bent upon mob violence. Deponent heard repeated threats to lynch the negroes himself. He heard, through reliable sources, of plans and threats to lynch them. He was warned a number of times by friends that an effort would be made to do this deponent violence and there was grave danger at that time of violence being attempted upon the negroes and their counsel. Deponent knows positively that this danger still exists, and while he does not believe the danger to deponent himself is as grave as it was, he does know that the danger to the defendants is greater since the Supreme Court decision. There is now a deliberate determination and plan to get them when they are brought back for trial. At the last August court, when it was thought defendants might again be tried, deponent was warned by a number of persons who claimed to know their plans, and depondent does believe that these informants know the plans. These informants even gave the details of the plans to lynch defendants at the last August court if they should have been brought back for trial. Deponent has kept in close touch with the situation. He is intimately acquainted with the situation to-day. He swears positively that there is not only a grave danger of a lynching if defendants are brought back to Taliaferro county for a trial, but he swears that efforts to lynch the defendants are, in deponent's opinion, an absolute certainty. Deponent himself has heard the threats. He has had reports on the situation from those who were in position to know the facts and who are reliable, and he knows that an attempt to lynch is certain and said efforts will be made with such determination as

to be almost certain of success. Defendants show that they are now in jail at Augusta, and that the superior court convenes there in November, and a trial could be had at that court. Police protection will be ample and the trial will be removed from the scene of the tragedy. This affidavit made to be used as evidence in the above-stated case. Sworn to October 25, 1920.

W. J. Sturdivant deposes as follows: He is sheriff of said county. In December, 1919, Will Rainey and Dink Butler got into an altercation, and Will Rainey received a mortal wound, from which he died in several days. There were a number of shots fired by both Rainey and Butler, according to the testimony at the trial. On the night of the homicide, when the negroes were placed in jail at Crawfordville, a crowd gathered around the jail and there was grave danger of mob violence. A number of prominent citizens of the town came out and a lynching was averted. The next day the negroes were carried to Washington, Ga., where they were kept till the trial on January 3, 1920. They were convicted of murder—Butler sentenced to hang, Fews given life sentence. The case was appealed to the Supreme Court, and the court reversed the lower court, holding that the evidence was not sufficient to convict. The defendants are now in jail at Augusta for safe-keeping, as it is very probable that violence would be done or attempted on them if kept here. Deponent is conversant with the situation in the county now, and believes most strongly that if an attempt is made to bring the defendants back to this county for trial, an attempt to lynch them will be made and might succeed. This has been rendered more certain by the decision of the higher court; and parties, realizing that a conviction of murder may not stand, would be more likely to resort to violence than before. Deponent knows that these threats have been made and believes they will be attempted and possibly carried out.

Affidavits of Dr. O. F. Portwood, a practising physician of Crawfordville, W. C. Chapman, chairman of the board of county commissioners, and C. Parham, were to the same effect as those set out above. Parham deposed that at the last August court he " was invited to join in a plan and purpose to take the negroes away from the sheriff at Barnett when he brought them up, it being thought then that they would be tried at the August term of court," that the danger of lynching them was then great, and

the same danger still continued to exist. In answer to the following questions, Ralph W. Golucke, clerk of the superior court, testified as follows: Q. " Do you consider it likely that violence will be done the defendants if brought back here for a trial?" A. " Well, if I were asked to point out a leader who I thought would lead a crowd to do so, I don't think I could do so." Q. " Do you think it likely that violence would be done them?" A. " Well, not unless the Rainey boys did it. I do not think any one else would do so. The Rainey boys might. Outside of them, I don't hardly think any others could get together enough to lynch the negroes. The people in Mr. Rainey's community want to see them punished, but know of no one who would act as a leader to do violence. I heard a lot about lynching them just after the killing of Mr. Rainey, and at the trial here and at the last August term of the court, when people thought they would be brought back for trial."

No evidence was offered in behalf of the State.

The judgment upon the motion was as follows: " On hearing the within motion for change of venue and carefully considering the cause (motion), I refuse the motion. I do so without doubting in the least any of the facts or evidence of any witness offered by movants; but I went in person to the county just a few days after the killing, met with many people of the county in a public meeting, I then called a special term of the court, tried movants, and, from my own observation and knowledge of the case and feeling of the people, and knowing the good people of Taliaferro county (and there are many), I can't get my consent to say to the outside world that these good folks won't give movants a fair trial. For these reasons I have to deny the motion. I therefore refuse to grant a change of venue. This December 17, 1920."

J. A. Beazley, for plaintiffs in error, cited: 141 Ga. 314; Id. 812; 143 Ga. 270; 145 Ga. 416; 20 Ga. App. 416.

M. L. Fells, solicitor-general, R. C. Norman, Alvin G. Golucke, contra.